WIEGAND *v.* TRINGALI

1. PLEADING—MOTIONS—SUMMARY JUDGMENT—COURT RULE.
   A motion for summary judgment asserting that there is no genuine issue of material fact must be supported by affidavit, but the filing of an answering affidavit is not mandatory and failure of the opposing party to file an affidavit is not necessarily fatal to his case (GCR 1963, 117).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 41 Am Jur, Pleading §§ 340–343.
[2, 3] 17 Am Jur 2d, Contracts §§ 294, 295.

2. CONTRACTS—PARTIES BOUND—INTENTION.
   The intention of the parties determines whether those persons who sign a writing which purports to be a contract between several named persons are bound by the writing where not all those who are named as parties sign.

3. CONTRACTS—PARTIES BOUND—INTENTION—QUESTION OF FACT.
   Whether the signers of a writing intended to be bound by it even though not all the persons named as parties signed is a question of fact to be decided upon evidence.

4. PLEADING—MOTIONS—SUMMARY JUDGMENT—ISSUE OF FACT.
   A genuine issue of material fact existed in an action where plaintiff pleaded a written contract between himself and two defendants to form a corporation, the writing being signed by the plaintiff and one of the defendants, and the signing defendant moved for summary judgment with a supporting affidavit that he had agreed to form a corporation only upon condition that the nonsigning defendant also agree to be one of the incorporators, where there was other evidence showing an agreement between the two signers and a lawyer and actions under that agreement directed toward obtaining a municipal contract that the pre-incorporation agreement contemplated would be performed by the corporation and thus tending to show that the signing defendant had an obligation to the plaintiff either under the pre-incorporation agreement or independently of it in any event.

Appeal from Macomb, Alton H. Noe, J. Submitted Division 2 November 13, 1969, at Lansing. (Docket No. 6,670.) Decided February 26, 1970.

Complaint by Gerald Wiegand against Dominic J. Tringali and Joseph Tringali for performance of a pre-incorporation agreement. Summary judgment for defendant Dominic Tringali. Plaintiff appeals. Reversed and remanded.

*Perica, Breithart, McAlpine & Carmody,* for plaintiff.

*Bennett, Gelman, Hand & Thompson,* for defendant Dominic J. Tringali.

Before: Levin, P. J., and T. M. Burns and Danhof, JJ.

Levin, P. J. In this action one of three persons named as parties in a written agreement signed by the other two did not sign the agreement. Nevertheless, one of the signers seeks to enforce it against the other signer.

Plaintiff, Gerald Wiegand, appeals a summary judgment dismissing his complaint. The complaint alleged that in March, 1968, Wiegand and defendants, Dominic and Joseph Tringali, entered into a pre-incorporation agreement. (Dominic and Joseph are brothers.) It was also alleged that the purpose of the corporation was to bid on a refuse disposal contract and that the contract was obtained by the defendants who refused to incorporate the corporation. Specific performance and other relief was sought by the plaintiff.

The terms of the pre-incorporation agreement were negotiated by plaintiff Wiegand and defendant Dominic without consultation with defendant Joseph. On March 29, 1968, Wiegand and Dominic met at the office of an attorney who drafted a written agreement to form a corporation. The agreement stated that the purpose of the corporation would be the performance of refuse collection services and related activities in the city of Troy and that Wiegand, Dominic, and Joseph would each subscribe to $1,000 of the corporation's capital stock. The agreement was signed by Dominic for himself and separately "for the proposed corporation". Wiegand also signed. Joseph, who was not present, never signed the agreement; by stipulation of the parties this action was dismissed as to him.

Dominic's motion for summary judgment asserts that he only agreed to form a corporation upon the condition that Joseph would agree to be one of the incorporators and that, since Joseph never agreed to become an incorporator, the agreement was legally ineffective. Dominic filed a supporting affidavit.[1]

Wiegand did not file an answering affidavit. His failure to do so is not, however, fatal. The court rule is clear that the filing of an answering affidavit is not mandatory; while it states that a summary judgment motion asserting the absence of a genuine issue of material fact "*shall* be supported by affidavit," it provides, in contrast, that "the opposing party * * * *may* serve opposing affidavits."[2] (Emphasis supplied.)

The question presented is whether there was a genuine issue of material fact as to whether Dominic would be bound by the agreement if Joseph did not sign it. We first consider the materiality of the claimed factual issue. And since we conclude that it is material, we later consider whether it appears from the affidavits of the parties and the depositions and documentary evidence of record that the factual issue is genuine.[3] Upon such examination we decide that the factual issue is genuine. Accordingly, we reverse the summary judgment and remand for trial.

In cases where a writing which purports to evidence a contract between several named persons has been signed by less than all those named, it is often found that the signers did not intend to become con-

---

[1] This affidavit did not comply with the requirements of GCR 1963, 117.3 and 116.4 in that it did not show affirmatively that the "affiant, if sworn as a witness could testify competently to the facts contained therein." Wiegand, however, does not make an issue of this deficiency.

[2] "Answering affidavits may be filed and usually will be, although they are not mandatory." 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Rule 117, authors' comments, p 363.

[3] See GCR 1963, 117.2(3).

tractually bound until all the apparent parties sign and deliver the writing. This is not, however, immutable doctrine. The parties may have entered into an oral contract which is effective without regard to whether the writing is signed.[4] And those who do sign the writing may have intended to be bound by its terms even though less than all the named persons sign. Their intention governs. The intention of the parties is a fact to be decided upon the evidence, not by invoking our personal, professional, or judicial experience.

In *Kaneko v. Okuda* (1961), 195 Cal App 2d 217 (15 Cal Rptr 792, 796), the writing required each of four promoters of a corporation to sell to the plaintiff a portion of the capital stock for which the promoters had subscribed. It was held that, on the facts presented, the three promoters who signed the writing intended to be bound even though the fourth promoter never signed. Similarly, see *Cox v. Berry* (1967), 19 Utah 2d 352 (431 P2d 575, 579).[5]

In *Palman v. Reynolds* (1944), 310 Mich 35, the Michigan Supreme Court affirmed a judgment declaring valid and enforceable a real estate lease even though one of the two persons named as the lessor did not sign. The property was owned by Reynolds

---

[4] See 1 Williston on Contracts (3d ed), § 28, p 66.

[5] In *Cox v. Berry*, cited in the accompanying text, an action was commenced against five directors of a corporation alleging that they had agreed to indemnify the plaintiff on a note and other debts assumed by him on behalf of the corporation. Some of the directors named in each of the two written indemnification agreements did not sign and it was urged that it was not intended that the signers would be bound until all named directors had signed. The Supreme Court of Utah reversed a summary judgment in favor of the defendants stating: "Even where it appears that it was intended that others sign an agreement, it is not necessarily invariably true that all must sign before any are bound. This depends upon the agreement and whether it appears that part of the consideration for signing was that others would also sign and be bound jointly with them. It is usually to be assumed that the parties signing an agreement are bound thereby unless it appears that they did not so intend unless others also signed."

and Butler "with the right of survivorship". Reynolds was entitled to the rents and benefits during her lifetime and Butler's rights would come into existence in the event that she survived Reynolds. A lease was prepared between Reynolds and Butler as lessors and another person as lessee. The lease was signed by Reynolds and the lessee. Two copies were forwarded to Butler who later returned them unsigned. The Court declared that the "pivotal question" was the intention of the parties ("what was in their minds at the time the lease was written?"). It quoted approvingly the following statement:

"The question as to whether those who have signed are bound is generally to be determined by the intention and understanding of the parties at the time of the execution of the instrument." 17 CJS, Contracts, § 62, p 735.[6]

The Court also referred to *Dillon* v. *Anderson* (1870), 43 NY 231, and quoted statements of the New York Court of Appeals in that case that a party denying the validity of a partially signed writing has the burden of showing that he was not to be bound until it was executed by all named parties, and that a party who does not intend to be bound until all sign should so declare when he delivers the writing.[7]

---

[6] The quotation from *Corpus Juris Secundum*, as set forth in this opinion of our Supreme Court, continues with the statement that the cases holding ineffective an agreement not signed by all the parties between whom it purports to be made are "usually those in which the parties executing the instrument would have a remedy by way of indemnity or contribution against the other parties named, which remedy is lost by the failure of such other parties to execute the instrument." See *Palman* v. *Reynolds, supra,* p 39; and 17 CJS, Contracts, § 62, p 735.

[7] Dominic's affidavit does not state whether his asserted intention not to become contractually bound until Joseph signed was communicated to Wiegand. Since the facts have not been fully developed it would be premature to say anything more on this aspect of the case.

We take it, however, from *Palman* v. *Reynolds,* that where a

We conclude that the intention of the parties is a material issue of fact, and now address the question whether it appears from the record that there is a genuine dispute concerning the resolution of that factual issue.

In this case the parties signed two writings at the same time. At the time the agreement to form a corporation was signed by Wiegand and Dominic, a separate written agreement was signed by Wiegand, Dominic and the attorney. This agreement, in which Joseph is not shown as a party, is captioned "Contingency Fee Agreement". By its terms the attorney is employed to represent the clients (identified in the agreement as Wiegand and Dominic) in connection with the "expediting and issuance" of the city of Troy refuse collection contract for 1968. Wiegand and Dominic obligated themselves under this agreement to pay the attorney $6,000, $3,000 of which was payable within ten days after the "issuance" of the Troy refuse collection contract to "Dominic J. Tringali as agent for Dominic J. Tringali and Gerald Wiegand in accordance with the terms and conditions of a pre-incorporation agreement."

Dominic testified on deposition that the refuse contract was awarded to Tringali Sanitation, Inc., on April 23, 1968, pursuant to its bid. Dominic was the sole stockholder of Tringali Sanitation, Inc. It appears from the deposition of both Dominic and Wiegand that the attorney engaged by them rendered services pursuant to the contingency fee agreement. Both Wiegand and Dominic testified that they paid the attorney money owing under that

written agreement is silent as to whether the persons who sign it intend to become legally obligated to each other before all persons named in it as parties have signed, parol evidence is admissible to show the intention of the signers.

agreement after the refuse contract was awarded.[8]
Wiegand testified that he, Dominic and the attorney
were present at the city of Troy meeting when the
contract was awarded.   He also testified that the
award was made to either Dominic or Tringali Sani-
tation or Dominic Tringali Incorporated.   It also
appears that Wiegand did not learn until some time
after the award that Joseph did not sign the pre-
incorporation agreement and that Dominic did not
intend to perform that agreement.

We are satisfied that there is a genuine issue of
fact.   The contingency fee agreement speaks of
Dominic as agent for himself and Wiegand under
the terms of the pre-incorporation agreement.   This
is some evidence that Dominic had a responsibility
to Wiegand and the proposed corporation under the
pre-incorporation agreement or independently of
that agreement without regard to whether Joseph
ever signed the pre-incorporation agreement.   The
fact that the attorney rendered services and, if it be
fact, that both parties made partial payment to him
is some evidence that the business of the proposed
corporation was not dependent upon whether Joseph
ever signed.

We are not, of course, deciding that the parties
did in fact intend to become contractually bound un-
der the pre-incorporation agreement even if Joseph
did not sign.   Rather, we decide that there is a
genuine issue of fact as to whether they intended to
become contractually bound before Joseph signed.

Wiegand also argues that if Dominic's signature
did not become effective unless Joseph signed,
Joseph's nonsigning is attributable to Dominic's fail-
ure to ask him to sign, and that Dominic breached
a duty to Wiegand and the corporation when he

[8] Dominic said he paid $3,000 and owed $3,000.   Wiegand said
he paid $1,500.

failed in good faith to seek Joseph's signature.[9] The record is totally inadequate to permit any evaluation of this claim. We note it because it will, no doubt, again be asserted and we wish to suggest that, although Dominic does not complain of Wiegand's failure to plead this claim, it would, no doubt, assist the trial court and, upon any subsequent review, the appellate courts, if Wiegand would plead this claim if he intends to rely on it.

Reversed and remanded for trial. Costs to appellant.

All concurred.

[9] See *Mehling* v. *Evening News Association* (1965), 374 Mich 349; 3 Corbin on Contracts, § 571, p 349.